EMPLOYERS MUTUAL LIABILITY INS. CO. OF WISCONSIN *v.* PURYEAR WOOD PRODUCTS CO.

5-5053                                   447 S. W. 2d 139

Opinion delivered November 24, 1969

*Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Gill & Clayton,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to the construction of certain words appearing under the exclusions section in an insurance policy, the policy providing that it does not apply to property damage to:

"(2)  property used by the insured, or

(3)  property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; . . ."

According to the stipulation entered into by the parties to this litigation, Puryear Wood Products Company, Inc., appellee herein, hereafter called Puryear, operated a sawmill at Mitchellville, Desha County, Arkansas, and had contracted with one Clifford Landon of Dumas to haul sawdust away from its plant. The sawdust was blown through a system of pipes from the plant to a point approximately 300 feet from the buildings, but still on appellee's property, and Landon or an employee, would park one of his trucks and trailers at that particular location. Employees of Puryear would then insert the pipe into the rear of the trailer, and the sawdust was blown into this trailer until it was full. It usually took about two days for the trailer to be filled, and when it was full, one of Puryear's employees would call Landon, and he would drive the truck and trailer away. Landon had instructed Puryear that when the truck needed moving, to call him, because he did not want anyone else to move it; while a trailer was being filled, it was left unattended.

The previous paragraph sets out the manner of operation in general, and about the 15th of June, 1967, Landon had parked a truck and trailer at the aforementioned site for the purpose of having it loaded with sawdust; one of appellee's employees inserted the blow pipe into the rear of the trailer, and it was thereafter left unattended. After some period of time, and while the sawdust was being blown into the trailer, a fire of undetermined origin started in or about the sawdust, or in or about the trailer, and damaged the trailer. At the time this happened, Landon's tractor was attached to the trailer, and the keys were in the ignition. Thereafter, Landon instituted suit in the Circuit Court of Desha County against Puryear seeking to recover damage caused by the fire to his trailer. Appellee held a policy of liability insurance in the sum of $100,000.00 with Employers Mutual Liability Insurance Company of Wisconsin, appellant herein. Under the contract, the company agreed to pay on behalf of the policyholder all sums which Puryear should become legally obligated to pay as damages because of property damage. Puryear contacted the insurance company after being sued, but the latter declined to defend the suit on behalf of Puryear, contending that the exclusions (previously set out in the first paragraph) made the coverage of the policy inapplicable to property *used* by Puryear or *property in its care, custody or control, or as to which it for any purpose was exercising physical control.* Suit was instituted by Puryear, seeking a declaratory judgment to the effect that the insurance company was obligated under the policy to provide coverage and to defend against the Landon suit. After the filing of an answer, the cause was submitted to the court on a stipulation embracing the facts heretofore set out. The court found, as follows:

"Based upon the stipulated facts and applicable authority, it is the finding of this Court that the defendant has not sustained its burden of proving that the plaintiff had possessory control of the trailer at the time of the occurrence, and that plaintiff was not 'using'

the trailer and did not have the 'care, custody or control' of the trailer within the meaning of these terms as used in said policy, at the time of the occurrence; and that defendant has the duty under its insurance policy to defend the suit by Clifford Landon against the plaintiff.''

From the judgment entered in accordance with this finding, appellant brings this appeal. For reversal, it is asserted that the trial court erred in holding that appellant company was obligated to afford Puryear a defense to the Landon complaint, and to pay any judgment rendered against Puryear.

At the outset, it might be mentioned that appellant's duty to defend the Landon suit would normally be determined by the allegations in the Landon complaint. We have held that the allegations in a complaint determine the obligation of the insurer to defend its insured *Fisher* v. *The Traveler's Indemnity Company,* 240 Ark. 273, 398 S. W. 2d 892, and cases cited therein. However, appellant does not contend that this court, in determining this question, is confined to those allegations. That complaint alleges that the trailer was in the care, custody and control of Puryear, but it also alleges that the damage to the trailer was a result of the negligence of Puryear. Since it would be possible that a jury could find that the loss was due to Puryear's negligence without also finding that the trailer was in its care, custody and control, it is apparent that appellant's obligation to defend cannot be determined simply from the allegations in the Landon complaint.

It is argued by appellant that Landon had surrendered to Puryear the care of the trailer and its custody and control, and Puryear was thus a bailee, *i. e.,* the custodial possession of Puryear was in legal effect a bailment. The case of *Bertig* v. *Norman,* 101 Ark. 75, 141 S. W. 201, defines a bailment, and appellee's argument is that a bailment carries with it the surrender of

possession and custody. However, the stipulation sets out that Puryear did not have the right to move the truck and trailer, and, in fact, if it should become necessary that same be moved, appellee was required to notify Landon, who would then send a driver to move the vehicle; because of this fact, we cannot agree that there was a surrender of possession or custody, and *Bertig* v. *Norman, supra,* points out this distinction.

In 62 A. L. R. 2d, Page 1244, in an annotation, "Liability Insurance—Custody of Insured," it is pointed out that no rule of general application can be deduced from the cases that have been decided, on the question of the meaning of "care, custody or control" of insured. It is stated:

"In construing the particular type of exclusion clause with which this annotation is concerned the courts have applied the underlying principle which governs the construction and interpretation of contracts of insurance generally. Thus, they have specifically stated that the rule that insurance policies, having been prepared by the insurer, must, if ambiguous, be construed most strongly against it and in favor of the insured, fully applies to such exclusionary provisions. Curiously enough, in applying this principle, the cases considered herein have reached opposite conclusions as to the existence of ambiguity."

It is interesting to note that there is authority to the effect that the care, custody, or control exclusion clause is inherently ambiguous, but, on the other hand, it has been said that the language is clear and unambiguous, and, accordingly, must be given the plain and ordinary meaning of the terms used. A discussion of all the cases would require a lengthy manuscript, and such a discussion would not be justified, since we, after a study of the exclusionary provisions, are firmly of the opinion that the language is ambiguous, and being ambiguous, the provisions must be construed against the

maker, and in favor of the insured. The very fact that courts of the several jurisdictions have arrived at different constructions as to the meaning of the words under discussion, and even in some instances have gone so far as to take almost opposite views, is certainly some indication that the terms, in the context used, are ambiguous.

Here, appellant relies principally upon the Washington case of *Madden* v. *Vitamilk Dairy, Inc.,* 367 P. 2d 127. There, the Supreme Court of Washington held that a milk tanker truck which was parked by the owner in the unloading area of the dairy, the employees of the latter being responsible for unloading the milk, and washing the tank, and who gave the directions as to movement of the truck, was under the "care, custody or control" of the dairy, and the exclusionary clause excluding coverage for damage to property under "care, custody or control" of insured was applicable. Appellee refutes that case with the Texas case of *Maryland Casualty Company* v. *Golden Jersey Creamery,* 389 S. W. 2d 701. There, the court mentioned that Maryland Casualty was relying principally on *Madden,* and proceeded to distinguish the case as follows:

"* * * In Madden, it appeared that the driver would surrender to the dairy or creamery employees the possession, care and control of the milk tank-truck until it had been unloaded, washed, cleaned and returned to him. Such is not the case here. In this case, the fact that an employee of appellee would receive from the driver of the milk tank-truck a hose connected to the tank and an electric cord for supplying power to the pump on it, would not conclusively place the tank-truck in the care, custody and control of appellee. These steps were merely incidental to the receipt of milk by appellee, which was a necessary function in the operation of its business on the premises."

The court also commented:

"The words 'care, custody and control' have been held to mean 'in charge of' or 'in charge' by the decisions. See *Great American Indemnity Co. of New York* v. *Saltzman*, 213 F. 2d 743 (8th Cir. 1954), in which, at page 748, the Court said:

'While the word "charge" has a very broad, and varied meaning (*McLoughlin* v. *Shaw*, 95 Conn. 102, 107, 111 A. 72), a person or thing is not "in charge of" an insured within the meaning of the policy unless he has the *right to exercise dominion or control over it.*' (Emphasis supplied by the Court)."

Again, we call attention to the fact that, under the stipulation, appellee did not have the right to exercise dominion or control over the truck and trailer, but, to the contrary, was required to notify Landon, who would send a driver, if the truck needed to be moved.

Our own case of *Hardware Mutual Casualty Company* v. *Crafton*, 233 Ark. 1020, 350 S. W. 2d 506, points out that the construction of the phrase, "care, custody and control," is, to a large extent, dependent upon circumstances, but that, in a general way, the word, "care," has reference to temporary charge; the word, "custody," implies a keeping or guarding, and "control" refers to the power, or the authority, to manage, superintend, direct, or oversee. It has already been pointed out that appellee certainly did not have the authority to do anything with the trailer, except to fill it, and there is no contention that Puryear was obligated to guard the property. It was well known that the filling operation was conducted in the absence of the Puryear employees.

We agree with the trial court that appellee did not have the care, custody, or control of the trailer within the meaning of those terms as used in the policy, at the time of the occurrence.

As to the word, "used," this court, in *Maryland Casualty Company* v. *Turner*, 235 Ark. 718, 361 S. W.

2d 646, mentioned that this word is, to some extent, employed by insurance companies as a substitute for the phrase, "care, custody, and control," in exemption clauses in liability policies. In addition, we certainly think this word is ambiguous, as used in the policy. Appellant, of course, argues that the trailer was being used because it was the receptacle for the sawdust. On the other hand, appellee contends that Puryear only had access to the trailer; that the actual operation was the blowing of the sawdust, and the instrument used in that operation was the pipe which had been inserted into the trailer. Puryear was not directing the operation in any way, and only had the duty to blow sawdust into the back of the trailer. It is, of course, true that appellee was only interested in getting rid of its sawdust, and there was no reason for it to have any interest in the method that Landon used to collect and haul away the sawdust. Possibly, cartons, crates, barrels, or other contrivances, though not nearly so convenient, could have been used to receive the sawdust, and subsequently placed on a truck or trailer bed by Landon employees. At any rate, we consider the term ambiguous.

It has already been pointed out that physical control or possession was not being exercised over the property, no Puryear employee being present, nor having the right to do anything with the tractor and trailer. The truck was left unattended by Landon's driver through his own choice, and the driver could have remained in the truck while it was being filled, but elected not to do so. As pointed out in appellee's brief, if we assume that the driver had remained in the truck, could it then be contended that Puryear had control of the trailer?

From what has been said, it is apparent that we consider the stipulated fact that Puryear could not move the truck and trailer, and would have to call Landon to send a driver (when the trailer was full) to be most important, for this is certainly pertinent to the question

of whether the truck and trailer were in the care, custody, or control of appellee.

We hold that there was substantial evidence to support the trial court's judgment.

Affirmed.