THE NATIONAL LIFE AND ACCIDENT INS. Co.
v. Murl Dean ABBOTT

5-5326                                    455 S. W. 2d 120

Opinion delivered June 2, 1970

*House, Holmes & Jewell;* By: *Phillip K. Lyon,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

CARLETON HARRIS, Chief Justice. The question presented on this appeal is the construction of certain language appearing in an insurance policy. Pertinent facts are undisputed, and are as follows: On December 12, 1968, A. G. Abbott purchased a life insurance policy from appellant company. The policy provided for the payment of $2,000 upon the death of Abbott and, additional protection of $2,000 (not here in question) making a total of $4,000. For an additional premium, the company agreed to pay Abbott's beneficiary an additional $4,000 if the insured were killed in a non-vehicle accident, as defined in the policy, or an additional $8,000 if the insured should be killed in a vehicle accident as defined in the policy. Two days after the policy was issued, Abbott was killed while driving his 1965 one-half ton Dodge pickup truck. It was stipulated between the parties that Abbott owned this truck and that it was used for pleasure only and not for work or for hire. Appellant, the National Life and Accident Insurance Company, paid Abbott's beneficiary, Murl Dean Abbott, his wife, $8,000, but refused to pay a total of $12,000. Thereafter, Mrs. Abbott instituted suit for $4,000. The company denied liability on the basis that the pickup truck driven by Abbott at the time of his death was excluded from coverage under the provisions of the policy. The vehicle accident provision reads as follows:

"The Vehicle Accident Benefit shall be payable in lieu of the Non-Vehicle Accident Benefit (1) if in the absence of this paragraph a benefit would be payable under the conditions and limitations of the preceding paragraph, (2) if the bodily injuries causing the death of the Insured are sustained at a time other than during a period of military service, and (3) if such injuries result from his (a) driving or riding in an automobile (as defined below) operated on a public street or highway other than in racing, drag racing, or in willful violation of any traffic law or ordinance, or (b) riding as a fare paying passenger in a public conveyance operated by a licensed common carrier for the regular transportation of passengers, or (c) riding as a passenger in an official school bus operating on an authorized trip. *The term "automobile" shall mean a four-wheeled passenger motor vehicle exclusively of the pleasure car type, not operated by the insured for hire."* [Our emphasis]

After the company had submitted Request for Admissions, both sides moved for a summary judgment on the basis of the facts heretofore recited. The court held that Mrs. Abbott's motion should be granted, and that appellant's motion should be denied. It thereupon entered judgment for appellee in the amount of $4,000, plus a 12% penalty, and an attorney's fee in the sum of $1,000, making a total judgment of $5,480. From the judgment so entered, appellant brings this appeal. For reversal, it is simply asserted that the court erred in granting appellee's motion for summary judgment and denying appellant's motion for summary judgment, since as a matter of law, the appellee's 1965 Dodge one-half ton pickup truck was not an automobile as defined in the policy.

We have, of course, held that when policy language is clear and unambiguous, the court should decide, as a matter of law, the construction. *McDaniel* v. *Missouri State Life Insurance Company* 185 Ark. 1160, 51 S. W. 2d 981. On the other hand, we have also held that if the language is ambiguous, such ambiguity is con-

strued against the party who prepared the contract, in this instance, the insurance company. *Employers Mutual Liability Insurance Co. of Wisconsin* v. *Puryear Wood Products Company,* 247 Ark., 447 S. W. 2d 139. The question therefore really is whether the italicized language in the agreement is ambiguous. We do not find this language to be ambiguous and it appears that this view is in accord with the majority of jurisdictions. Cases supporting this concept are logical and well reasoned. One of the leading cases on this subject is *Spence* v. *Washington National Insurance Company* (Ill.) 50 NE 2d 128. There, an accident policy compensated for death occurring while riding in a private passenger type automobile of the exclusively pleasure type. The construction of Part four was an issue in the litigation, the court stating,

"The salient words of part four (a) which was the part upon which liability is here claimed reads as follows: 'part four: Automobile, Taxi Cab, Burning Buildings and other specified accidents, (a) By the wrecking or disabling of any private passenger type automobile of the exclusively pleasure type (motorcycles excepted) * * * within which the Insured is riding or driving as a passenger at the time of such wrecking or disabling'."

In holding that a Ford truck was not included in the coverage just mentioned, the appellate court of Illinois (Fourth District) said:

"The remaining question for consideration is whether the Ford truck in which Willie Spence was riding at the time of the accident brought him within the terms of his contract of insurance with this company. We have quoted, above, the terms of Part 4 of this policy. It seems clear to us that this Ford truck was not such a vehicle. It was the ordinary standard model half ton Ford pick-up truck. It had an enclosed cab with an express type body in the rear. Such trucks are built for light pick-up work, hauling of material, delivery of groceries and the like.

"The contention of plaintiff in her argument is that she has proven that Willie Spence used this truck for hauling persons whom he picked up on the highway or at church and for transporting his family to church and other places; that he rode in it to and from work; that sometimes he put benches in the back part of the truck upon which persons sat; and that he only hauled coal and articles in it for his own family use. Plaintiff concludes that as to him, Spence, his truck was a passenger type automobile of the exclusively pleasure type.

"But it seems to us that such is not the proper yardstick with which to measure this insurance contract. It is not a question whether this truck was a passenger automobile 'as to Spence'. Defendant had the right to prescribe the kind of vehicle and type of vehicle it desired to cover by its insurance policy. Whether accidents are more likely to occur to people riding in trucks or whether more serious injuries may result to people in truck accidents might be a reason why defendant was pleased to exclude such vehicle by the wording in its contract. But any reason defendant might have had for such exclusion is immaterial. *This policy did not say that it covered a vehicle which might be used as a passenger car by the insured. If the construction urged by the plaintiff is recognized an insured might then ride in a tractor or tank or caterpillar vehicle, and call it, as to him, a passenger automobile.*" [Our emphasis]

In *Gray* v. *North American Co. for Life, Acc., & Health Insurance* 128 So. 2d 233, the Court of Appeal of Louisiana (Second Circuit) held likewise in construing a policy provision which afforded accidental insurance if the insured lost his life through the "wrecking or disablement of a private automobile of the exclusively pleasure type * * *". The policy holder, Gray, was accidentally killed while a guest passenger in a pickup truck, and the question presented was whether this vehicle was susceptible of classification as a private automobile of the exclusively pleasure

type. It is interesting to note that here too, the contention was advanced that inasmuch as the driver of the truck *used it exclusively for his own pleasure and convenience,* it was within the policy coverage. After discussing cases on the subject, including *Spence,* the court concluded:

"We have not been able to discover any ambiguity in the policy that would permit us to hold that the insured who met his death while riding in a pick-up truck of less than 1,500 pounds capacity, was riding in a private automobile of the 'exclusively pleasure type'."

A like view is expressed in *Pennell* v. *United Insurance Company, Inc.* (Texas) 243 S. W. 572. There, Pennell was accidentally injured while driving a jeep in the performance of his duties, and he held a policy providing benefits for total loss of time caused by accidental injury. There was a further provision in the policy that the monthly indemnity would be doubled if the insured was injured "while driving or riding within any private passenger automobile exclusively of the pleasure car type". In holding with the insurance company, the court found no ambiguity and stated:

"The words are simple. We do not find, as petitioner contends, that the word 'exclusively' causes the description to be ambiguous or that ambiguity arises from the 'placement' of that word. 'Exclusively' gives emphasis to the description as an automobile of the pleasure car type. We believe the words clearly mean that the double indemnity provision applies only to automobiles that are constructed and intended to be used exclusively for pleasure, and does not apply to automobiles constructed and intended to be used for freight carrying or agricultural or industrial purposes, and does not apply to automobiles constructed and intended to be used both for pleasure and for freight carrying or agricultural or industrial purposes."

In both this case and *Gray* v. *North American Com-*

*pany for Life, Acc., & Health Ins., Supra,* the cases are distinguished, in the opinions, from the Tennessee case of *Aetna Life Insurance Company* v. *Bidwell* 241 S. W. 2d 595, the Tennessee case holding that a recovery was proper where an insured was killed while riding on a pleasure trip in a one-half ton pickup truck, this case being cited by appellee in her brief. There, the clause in question set out that the insured was covered, if killed, "while—riding in—a private passenger automobile of the pleasure type". The contract then provided that the term "auto" did not "include a motorcycle or any vehicle or mechanical device for aerial navagation". In distinguishing the case, both the Louisiana and Texas courts[1] pointed out that the policy in *Bidwell* did not use the word "exclusively". In fact, a part of the *Bidwell* opinion is quoted in *Gray* as follows:

"Under the immediately above stated view of the matter, it would follow that in a policy where the word 'exclusively' is omitted, then the expression 'of the pleasure car type' is ambiguous and evidence as to the common use of a given type passenger automobile for pleasure purposes would be material to the question of whether that particular type passenger automobile may be reasonably considered as one of a pleasure type, if the policy furnished no definition."

Since the present policy contains that word, *Bidwell* is not authority for appellee's position.

The only other authority cited by appellee interpreting similarly worded contracts is the Missouri case of *Hoover* v. *National Casualty Company* 162 S. W. 2d 363. There, Hoover contended for recovery under a clause which provided a $1,000 benefit if the death of the insured was caused;

[1]In *Penell,* the court pointed out that Iowa and North Carolina courts both held that the same words of description as those construed in *Bidwell, i. e.,* the words "private passenger automobile of the pleasure car type" do not include a Ford pickup truck or a Ford one and one-half ton truck, although the truck may be used and is sometimes used for transporting passengers.

"(a) By the wrecking of a private pleasure type automobile or horse-drawn vehicle within which the insured is driving or riding as a passenger, (excluding motorcycle and farm machinery) or while so driving or riding by being accidently thrown from within such wrecked automobile or vehicle."

The court allowed recovery, giving its reason as follows:

"Under the rule expressio unius, the phrase 'pleasure type automobile' used by defendant in its contract of insurance necessarily excluded all other types of motor vehicles. 13 C. J. 537: 17 C. J. S., Contracts, § 312. But defendant was not content with use of a term which it contends is unambiguous and which excludes automobiles of the type in which insured was riding when killed. It went further and specifically excluded motorcycles and a whole class of automotive farm machinery which, we think, could not have been considered as coming under the classification of 'pleasure type automobile'. When the above rule is applied to the exclusion clause, it would seem that all automotive vehicles not specifically named and excluded are meant to be included in the coverage. Thus defendant has created an ambiguous contract which, to the uninitiated in the law, might indicate that an insured would be protected against accidents while riding in almost any kind of a privately owned and operated automobile, of which the bus in question would be one."

Appellee likewise argues in the case before us that the insuror created an ambiguity by adding the exclusion as to vehicles operated for hire[2]. We cannot agree

[2]Appellee offered a brochure published by the company describing the benefits of this policy and it is argued that the explanation of the benefits of the clause here in question showed that the provision in the policy was ambiguous. However, this brochure was not offered until over two months after the case had been submitted. Appellant objected to its admission, contending that it had not been tendered in proper time, and also that it was immaterial and irrelevant. The court refused to consider it, not giving a reason, but ordered that the exhibit be placed in the record. Certainly, we could not say that the court abused its discretion in holding that the offer was made "out of time", and no consideration is given to this brochure.

that this one little phrase creates an ambiguity; rather, it seems that the language is clear and unmistakable. The clause simply provides that an insured is covered if he is killed while driving, or riding in, a passenger motor vehicle exclusively of the pleasure car type, and he is not at the time operating that vehicle for hire.

Appellee also predicates her case in large measure upon the fact that it is stipulated that the pickup truck had been used by Abbott entirely for pleasure. But "use" does not govern whether the vehicle involved here was included in the coverage; rather, liability is determined by the "type" of vehicle involved. This same contention was considered in *Spence* v. *Washington National Insurance Co., Supra,* and it will be noted that we have italicized the language from that opinion which relates to the argument now made.

It is also argued that it is unconscionable to permit an insurance company to sell a policy providing to benefits from death by accidental means in a motor vehicle, and then deny coverage when death occurs in the only motor vehicle owned by the deceased. In the first place, the clause speaks for itself; in the next place, there is nothing in the record to indicate that the company knew the pickup truck was the only vehicle owned by Abbott; and of course, Abbott was afforded coverage if killed while riding as a passenger in some other person's four wheeled passenger motor vehicle exclusively of the pleasure car type.

Finally, appellee says it would have been simple for the clause to have excluded pickup trucks from coverage. We daresay, however, that there would then be disagreement as to what constituted a pickup truck; also, it would have been necessary to list a long line of excluded types of vehicles in order to make clear that only "motor vehicles exclusively of the pleasure car type" were covered.

For the reasons herein set out, we have concluded that the court erred in entering summary judgment for

appellee, instead of rendering a summary judgment for appellant. The judgment is accordingly reversed, and the cause dismissed.

It is so ordered.